UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DULCE GARCIA-ORTIZ,<br><br>    Plaintiff,<br><br>v.<br><br>JANCO FS 3, LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-00239-TLT<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT AND MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD**<br><br>Re: Dkt. Nos. 38, 39 |

Within a year of the filing of the complaint, Plaintiff Dulce Garcia-Ortiz and Defendant Janco FS 3, LLC (DBA Velociti Services) (hereinafter, "Velociti") were able to settle this case. *See* ECF 1 (complaint, filed January 12, 2024); ECF 22 (notice of settlement, filed December 27, 2024). The Court then granted Plaintiff's motion for preliminary approval of class and representative action settlement. ECF 37. Since then, class notices have been mailed and no objections have been received.

Pending before the Court is Plaintiff's motion for final approval of class and representative action settlement and motion for attorney's fees, costs, and service award. *See* ECF 38, ECF 39. In its discretion, the Court determines that the motion is suitable for decision without oral argument. *See* Civil L.R. 7-1(b).

Having considered the motion briefing, the terms of the Settlement Agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed. The Court also **GRANTS** Plaintiff's motion for attorney's fees, costs, and service award. The hearing set for November 18, 2025, is hereby **VACATED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff, a California resident who was previously employed by Velociti as a non-exempt, hourly employee, filed a class action complaint against Velociti on January 12, 2024. *See* ECF 1; ECF 26 ¶¶ 14, 31. On December 19, 2024, the parties reached a settlement after arms-length negotiations with the assistance of Magistrate Judge Sallie Kim. ECF 22 at 2. To ensure that the complaint's class definition matches the settlement's class definition, the Court granted the parties' request for Plaintiff to file an amended complaint. *See* ECF 24, 25.

On February 25, 2025, Plaintiff filed an amended complaint asserting the following claims against Velociti: (1) failure to provide meal periods or compensation in lieu thereof in violation of Labor Codes §§ 226.7, 512 and 558; (2) failure to provide rest periods or compensation in lieu thereof in violation of Labor Codes §§ 226.7, 512 and 558; (3) failure to pay all wages in violation of Labor Codes §§ 510, 1194, 1194.2; (4) knowing and intentional failure to comply with itemized employee wage statement provisions in violation of Labor Code § 226(a),(e); (5) failure to pay wages due at the time of discharge in violation of Labor Code §§ 201–202, resulting in waiting time penalties; (6) failure to timely pay employees in violation of Labor Code § 204(a)(b); (7) failure to reimburse for business expenses in violation of California Labor Code § 2802; (8) failure to pay for all hours worked, including overtime hours, in violation of Labor Codes §§ 210, 218; (9) failure to provide place of employment that is safe and healthful in violation of Labor Codes §§ 6400, 6401, 6402, 6403, 6404, 6407 and 8 C.C.R. § 3202; (10) unfair competition pursuant to Business & Professions Code § 17200; and (11) penalties pursuant to Labor Code 2699(f) for violation of Labor Codes §§ 226.7, 512, 558, 510, 1194, 1194.2, 226(a), (e), 201-203, 204(a)(b), 2802, 210, 218, 6400, 6401, 6403, 6404, 6407, and 8 C.C.R. § 3202. ECF 26 ¶¶ 41–100.

On April 30, 2025, the Court granted Plaintiff's motion for preliminary approval of class and representative action settlement and provisional class certification. ECF 37. On September 2, 2025, Plaintiff filed a motion for final approval of class and representative action settlement and motion for attorney's fees, costs, and service award. *See* ECF 38, ECF 39. No opposition was filed. On November 12, 2025, the Court provided the parties with questions for the November 18,

1   2025 hearing on Plaintiff's motion. ECF 41. On November 14, 2025, Plaintiff provided a

2   supplemental brief to answer the Court's questions. ECF 43.

### B. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, Velociti will pay $190,000 into a common settlement fund, without admitting liability. *See* Settlement Agreement ¶¶ 3.1, 5.2. This Gross Settlement Amount includes attorney's fees and costs, the cost of settlement administration, the Plaintiff's class representative service award, payment for PAGA penalties, and tax expenses.

#### i. Attorney's Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to 33 and 1/3% of the Gross Settlement Amount, currently estimated as $63,327, and litigation expenses of actual costs incurred, currently estimated as $2,256.76. *See* Settlement Agreement ¶ 3.2.2; 38–52 ¶¶ 34, 37; ECF 29-1, Exhibit D; ECF 34 at 1. The Gross Settlement Amount includes payment to the settlement administrator, which is not to exceed $6,500. *See* Settlement Agreement ¶ 3.2.3; ECF 29-1, Exhibit F. Plaintiff Garcia-Ortiz will receive a class representative service payment of $7,500. Settlement Agreement ¶ 3.2.1. The Gross Settlement Amount also includes a $15,000 PAGA penalties payment, $11,250 of which will be paid to the California Labor & Workforce Development Agency and $3,750 will be distributed to the participating class members in accordance with the Settlement Agreement. *See id*. ¶ 3.2.5.

#### ii. Class Relief

After deductions from the Gross Settlement Amount for fees, costs, and service incentive awards, the Net Settlement Amount available to participating class members will consist of approximately $95,416.24. *See* ECF 34 at 1. Each of the estimated 85 class members will receive a pro rata distribution of the Net Settlement Amount, an average of $1,122.54, without having to submit a claim form, unless the class member chooses to exclude herself or himself. *See* Settlement Agreement ¶ 3.1; ECF 34 at 1. Each participating class member's distribution will be calculated by "(a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and (b) multiplying the result by each Participating Class." Settlement Agreement ¶¶ 3.1, 3.2.4, 3.2.4.2, 7.3.3.

### iii. Reversion Clause/*Cy Pres* Recipient

The Settlement Agreement provides that any class member's uncashed check will be considered void after 90 days of the mailing date. *Id*. ¶ 4.4.1. The Settlement Agreement originally stated that "[a]ny residual funds from the uncashed settlement checks shall revert to [Velociti]." *Id*. ¶ 4.4.3. However, as the parties conceded during oral argument on Plaintiff's motion for preliminary approval of settlement, the University of California Berkeley's Institute for Research on Labor and Employment shall be named as a *cy pres* recipient in lieu of the Settlement Agreement's reversion clause. ECF 37 at 1,4, 7–8, 10.

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by Apex Class Action Administration ("Apex"). Settlement Agreement ¶ 7.1. After the Court granted preliminary approval of class and representative action settlement and provisional class certification on April 30, 2025, Apex generated a formatted Class Notice and mailed the Class Notice to the 85 identified in Velocitti's class data file. ECF 38-1 at ¶¶ 4–7. The data file contained "the names, social security numbers, last known mailing addresses, and the total number of relevant workweeks and PAGA pay periods worked by each Settlement Class Member[,]" and was reviewed by Apex for duplicated or potential inconsistencies. *Id*. ¶ 5. Before mailing the Class Notice, Apex verified all 85 individual settlement class member names and addresses through the National Change of Address ("NCOA") database maintained by the United States Postal Service. *Id*. ¶ 6. Apex utilized any updated address found on the NCOA database. *Id*. If, however, an updated address was not found, Apex relief on the address provided by Defendants. *Id*.

On June 13, 2025, Class Notices were sent via U.S First Class Mail to all 85 individual class members. *Id*. 7. As of September 2, 2025, Apex received 8 returned Class Notices as undeliverable. *Id*. 8. For these 8 individuals, Apex performed a computerized skip trace to obtain updated addresses, which resulted in 3 updated addresses. *Id*. Apex re-mailed Class Notices to these 3 updated addresses via U.S. First Class Mail. *Id*. ¶¶ 8–9. The 5 class notices that did not return an update address following the skip trace have been considered undeliverable. *Id*. ¶ 10.

As of September 2, 2025, Apex has not received any requests for exclusion, objections, or

4

disputes. *Id*. ¶¶ 11–13. Class members were given until August 12, 2025, to object to or exclude themselves from the Settlement Agreement. The Settlement Agreement does not require class members to submit a claim to receive settlement benefits. Settlement Agreement ¶ 3.1.

## II. FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT

### A. Legal Standard

The Court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998). The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id*. at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties*." In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

### B. Analysis

#### i. The Settlement Class Meets the Prerequisites for Certification

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of

certification of the Settlement Class. ECF 37 at 5–6.

The Settlement Class includes 85 members and involves a common question of whether Velociti provided meal and rest breaks, pay for overtime, and itemized wage statements. *Id*. (citing *Ries v. Ariz. Beverages USA LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not.")); *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140 (9th Cir. 2016) ("Whether the proffered evidence ultimately shows that Mercer failed to pay its workers touches on a central element of liability . . . the district court did not abuse its discretion by identifying a common question of fact concerning whether Mercer's domestic workers were consistently paid $12 per hour for H-2A work."). Plaintiff is not subject to unique defenses. *See DZ Reserve v. Meta Platforms, Inc*., 96 F.4th 1223, 1238 (9th Cir. 2024) ("We will affirm a district court's typicality determination if the district court did not commit a clear error of judgment in concluding that the named plaintiff would not be subject to unique defenses such that typicality would be defeated.") (cleaned up). There also appears to be no conflict of interest between Plaintiff and the Settlement Class. Regarding Rule 23(b)(3), "[c]lass members will recover based on the same alleged injuries over the course of their current or former employment with Velocitti." ECF 37 at 6.

Accordingly, the Court finds that the Settlement Class meets the prerequisites for certification.

### ii. Adequacy of Notice

The Court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all

1  applicable requirements of due process and any other applicable requirements under federal law.
2  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice
3  reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of
4  the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover*
5  *Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

6  The parties' proposed notice procedures provided the best notice practicable and
7  reasonably calculated to apprise class members of the settlement and their rights to object or
8  exclude themselves.  ECF 37 at 9–10.  Velocitti provided the last known address for all class
9  members to Apex, the Settlement Administrator, and class notices were sent via U.S First Class
10 Mail to all 85 individual class members.  ECF 38-1 ¶¶ 5, 7.  Apex performed computerized skip
11 traces for the 8 individuals whose addresses were returned as undeliverable, which resulted in 3
12 updated addresses.  *Id*. ¶¶ 8.  Apex then re-mailed class notices to these 3 updated addresses via
13 U.S. First Class Mail.  *Id*. ¶¶ 8–9.  Ultimately, 80 of the 85 class members, or 94.11%,
14 successfully received class notices.

15 Accordingly, based on the above, the Court finds that the Settlement Class has been
16 provided adequate notice.

### iii.   The Settlement is Fair and Reasonable

18 As the Court previously found in its order granting preliminary approval, the *Hanlon*
19 factors indicate the settlement here is fair and reasonable and treats class members equitably
20 relative to one another.  ECF 37 at 6–8.  The settlement was negotiated at arms-length with the
21 assistance of Magistrate Judge Kim.  *See* ECF 22 at 2; *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948,
22 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, noncollusive,
23 negotiated resolution . . . and have never prescribed a particular formula by which that outcome
24 must be tested.").  The parties concede that all unpaid funds will be sent to the University of
25 California Berkeley's Institute for Research on Labor and Employment as a *cy pres* recipient.
26 Moreover, as discussed in the Court's order granting preliminary approval, "the Settlement
27 Agreement appears to treat Class Members equitably relative to each other" and "[p]articipating
28 Class Members will receive a payment distribution without having to submit any claim as a

7

1  condition of payment." ECF 37 at 7.

      **iv.**    **Objections**

No individual objections were filed or submitted.

      **v.**    **Other Findings**

On March 3, 2025, the parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). ECF 43. Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

      **vi.**    **Certification is Granted and the Settlement is Approved**

After reviewing all the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. The *cy pres* recipient, the University of California Berkeley's Institute for Research on Labor and Employment, is **APPROVED**.

**III.   MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD**

    **A.**    **Attorney's Fees**

Class counsel seeks attorney's fees in the amount of $63,327.00, or 33 and 1/3% of the Gross Settlement Amount. ECF 369 at 11. Class counsel has worked 103.5 hours on the case and has an hourly rate of $950. *Id*.

California law allows attorney's fees based on the "percentage of fund method." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). "Under the percentage-of-recovery method, the attorney's fees equal some percentage of the common settlement fund." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "In common fund cases, 25% of the total pool is the 'benchmark' for a reasonable fee award." *Vigil v. Hyatt Corp.*, No. 22-cv-693, 2024 WL 2137640, at *6 (N.D. Cal. May 13, 2024) (quoting *In re Bluetooth*, 654 F.3d at 942). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). "These circumstances include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases." *Vigil*, 2024 WL 2137640, at *6

1  (citing *Vizaino*, 290 F.3d at 1048–50). "Because in common fund cases the relationship between
2  plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that
3  when awarding attorneys' fees from a common fund, the district court must assume the role of
4  fiduciary for the class plaintiffs." *Vizcaino*, 290 F.3d at 1052.

5      Here, class counsel obtained a good result for the Settlement Class. The parties settled for
6  $190,000, which is 79% of the maximum potential recovery as calculated by class counsel, and
7  the settlement agreement does not contain a reversionary clause. ECF 38-2 ¶ 21; *see Koeppen v.*
8  *Carvana, LLC*, No. 21-cv-1951, 2024 WL 3925703, at *11 (N.D. Cal. Aug. 22, 2024) ("Class
9  Counsel obtained a significant recovery for the class by securing a $1,050,000 non-reversionary
10 settlement fund. . .class members stand to receive $423.74 on average for their injuries. . . The
11 Court agrees that this is a good result that confers benefits on the class."). "The fact that no class
12 members have objected and only one class member opted out buttresses this conclusion."
13 *Koeppen*, 2024 WL 3925703, at *12. Plaintiff also faced substantial risks in litigation, which
14 included a risk that the Court would deny class certification, making recovery not feasible or
15 realistic. ECF 38-2 ¶¶ 22–23. The Court also recognizes that class counsel has 18 years of
16 experience, and "courts tend to find above-market-value fee awards more appropriate in the class
17 action context given the need to encourage counsel to take on cases for plaintiffs who may not
18 otherwise be able to afford to pay hourly fees." *Koeppen*, 2024 WL 3925703, at *12. Finally,
19 class counsel's request for 33 and 1/3% of the Gross Settlement Amount "is consistent with other
20 wage and hour class actions where recovery is less than $10 million." *Clayborne v. Newtron,*
21 *LLC*, No. 19-cv-7624, 2023 WL 5748773, at *6 (N.D. Cal. Sept. 6, 2023) (awarding 35%); *Rabin*
22 *v. PricewaterhouseCoopers LLP*, No. 16-cv-2276, 2021 WL 837626, at *7 (N.D. Cal. Feb. 4,
23 2021) (awarding 35%).

24     A lode-star cross check supports Plaintiff's request for attorney's fees. *See Vizcaino*, 290
25 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the
26 litigation, provides a check on the reasonableness of the percentage award."). This lode-star check
27 "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the
28 case." *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015).

Counsel's rate is $950 and is "commensurate with the market rates in Los Angeles for attorneys of comparable experience and skill handling complex litigation." ECF 38-2 ¶¶ 36, 43; *see United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[A]ffidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate."). Class counsel performed a total of 103.5 hours of work, as shown below:

| Task | Hours |
|---|---|
| Pre-filing investigation | 6 |
| Drafting PAGA Letter | 2.5 |
| Drafting Complaint | 4 |
| Drafting Initial Disclosures | 1.5 |
| Reviewing Defendant's Initial Disclosures | 0.5 |
| Drafting formal discovery requests | 2.5 |
| Drafting formal discovery responses | 3 |
| Reviewing informal production of documents, conducting research on wage and hour issues, and analyzing time and pay records | 18 |
| Drafting Settlement Conference Statement and preparing for Settlement Conference | 8 |
| Attending Settlement Conference | 9 |
| Drafting Settlement documents | 6 |
| Drafting First Amended Complaint | 1 |
| Drafting Preliminary Approval Motion | 14 |
| Attending Preliminary Approval Hearing | 1 |
| Reviewing Preliminary Approval Order | 0.5 |
| Reviewing Documents from Administrator | 5 |
| Drafting Final Approval Motion | 16 |
| Estimated Future Work | 5 |
|  | 103.5 |

ECF 38-2 ¶ 36. A calculation of 103.5 hours times counsel's $950 rate results in $98,325.00, which is a higher than the fees that class counsel is seeking. *Id.* ¶¶ 38, 39. The Court finds this negative multiplier "strongly suggests the reasonableness of a negotiated fee." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-7087, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (cleaned up).

Accordingly, the Court grants Plaintiff's motion for attorney's fees of $63,327.00.

10

B.  **Costs Award**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $2,256.76.  ECF 39 at 5.  Class counsel's costs include:

**Dulce Garcia-Ortiz v. JANCO 3, LLC, et al.**

**Counsel's Costs**

| EXPENSE CATEGORY | EXPENSE |
|---|---|
| Filing Fee | $488.35 |
| Service Fee | $149.35 |
| PAGA Filing Fees | $75.00 |
| PACER Fees | $3.20 |
| Complex Fees | $1,000.00 |
| Filing Fees | $10.30 |
| Travel | $494.96 |
| Postage/Fedex Charges | $32.00 |
| Photocopy/ Printing Charges | $2.40 |
| | |
| **Total Expenses** | **$2,256.76** |

ECF 38-2, Exh. C (Counsel's Costs).  Plaintiff's "Complex Fees" consists of the $1,000.00 filing fee for filing a complex case in California Superior Court.  ECF 43 at 1.  This case was removed from San Francisco Superior Court on April 12, 2024.  ECF 1.  Moreover, Plaintiff's "Service Fees" of $149.35 consists of the fees to utilize a process server to serve the summons and complaint on Defendants.  ECF 43 at 1.

The Court finds this amount reasonable, fair, and adequate.

C.  **Class Representative Incentive Award**

Plaintiff Dulce Garcia-Ortiz requests a class representative incentive award of $7,500. ECF 39 at 9–10.  Plaintiff argues that the class representative assisted with the investigation by

11

providing counsel with information and documents, assisted with the investigation provided by Defendants, and was active in the litigation. *Id*; ECF 38-2 at ¶ 33.

The Court "must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). "Courts in this district recognize that a $ 5,000 incentive award is 'presumptively reasonable.'" *Austin v. Foodliner, Inc.*, 2019 WL 2077851 (N.D. Cal. May 10, 2019) (collecting cases).

Here, Plaintiff spent 45–50 hours working or participating in this case, which included regularly conferencing with attorneys, discussing settlement options, assisting with gathering evidence, helping attorneys prepare mediation, answering questions about policies and practices, and participating in the in-person settlement conference with Magistrate Judge Kim. ECF 38-3 (Dulce Garcia-Ortiz Decl.) ¶ 7. By serving as the class representative, Plaintiff assumed the risks and uncertainties of the case and has a fear that future employers may not hire her. *Id*. ¶¶ 9–10. The Court thus finds that a service award of $7,500 is appropriate in this case. *See Brown v. Hain Celestial Group, Inc, No*. 11-cv-3082, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving $7,500 award where "the named plaintiffs described sufficiently the efforts of the named plaintiffs, including consulting with counsel, attending mediations, being deposed, and otherwise participating in the litigation.").

**IV.   CONCLUSION**

For the reasons above, the Court **GRANTS** Plaintiff's motion for final approval for

settlement and **GRANTS** Plaintiff's motion for attorney's fees, reimbursement of costs, and service payment to plaintiff. The Court ORDERS as follows:

1. The Court confirms its conditional certification of the Settlement Class for settlement purposes only.
2. The Court grants final approval of the parties' Settlement Agreement, which shall reflect a *cy pres* of University of California Berkeley's Institute for Research on Labor and Employment in lieu of reversion to Defendant.
3. The Court awards class counsel $63,327.00 in attorney's fees.
4. The Court awards class counsel costs of up to $2,256.76.
5. The Court awards named plaintiff Dulce Garcia-Ortiz a service incentive award of $7,500.
6. The parties shall file a declaration regarding final distribution by July 21, 2026.
7. A compliance hearing shall be held, in-person, on August 25, 2026.

This Order resolves ECF 38, 39.

    IT IS SO ORDERED.

Dated: November 14, 2025

_____
TRINA L. THOMPSON
United States District Judge